## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETROLEUM SERVICE COMPANY, | : | No. 3:23cv1500 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| SANTIE'S WHOLESALE OIL | : | |
| COMPANY d/b/a SANTIE OIL | : | |
| COMPANY, | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court is the motion to transfer venue filed by Defendant Santie's Wholesale Oil Company d/b/a Santie Oil Company ("Santie Oil"). (Doc. 11). Defendant Santie Oil seeks to transfer this matter to the United States District Court for the Eastern District of Missouri.  Having been full briefed, this procedural dispute is ripe for disposition.

## Background

This matter involves Plaintiff Petroleum Service Company's claims for copyright infringement against Defendant Santie Oil related to content on the defendant's website.  Per the complaint, plaintiff distributes oil and lubricants from its principal place of business in Wilkes-Barre, Pennsylvania. (Doc. 1, ¶¶ 1, 8).  Plaintiff maintains a website selling petroleum products, rust-preventative coatings, and application equipment. (Id. ¶ 8).   Defendant Santie Oil also

distributes oil and lubricants through its own website. (Id. ¶¶ 22, 24). Defendant's principal place of business is in Sikeston, Missouri.[1] (Id. ¶ 2).

Plaintiff alleges it has registered numerous copyrights as part of the development of its business, including one for its website. (Id. ¶¶11-14, Exh. A.). Plaintiff also asserts that the website contains various proprietary images and descriptions of branded products. (Id. ¶¶ 15-17). Plaintiff claims that the Santie Oil website infringed on plaintiff's copyrighted material. (Id. ¶¶ 27-29).

Specifically, plaintiff alleges that, in June 2023, the defendant willfully copied from plaintiff's website and displayed a copyrighted image of a Tectyl product[2] along with copyrighted descriptions of surface preparation, application, removal, and storage without plaintiff's express or implied consent. (Id.) Per the complaint, defendant has reproduced proprietary images and descriptions from plaintiff's website since at least 2016. (Id. ¶¶ 24-28). Plaintiff also contends that defendant improperly created derivative works from plaintiff's website for use on the Santie Oil website. (Id. ¶ 45). Furthermore, plaintiff avers that the defendant "admitted its willful copyright infringement, expressly advising plaintiff that it had

---

[1] For reference, Sikeston, Missouri is approximately thirty (30) miles away from Cape Girardeau, Missouri. Wilson v. Great Atl. & Pac. Tea Co., 156 F. Supp. 767, 768 (W.D. Mo. 1957). The Eastern District of Missouri maintains courthouses in St. Louis and Cape Girardeau.

[2] Tectyl is a registered trademark of Daubert Chemical Company. (Doc. 1, Complaint ¶ 17). The product in question is Tectyl 275, which plaintiff describes as a "water displacing, solvent cutback corrosion-preventative compound, lubricant, and penetrant[,]" that has "fingerprint suppressor and removal capabilities." (Doc. 1-5).

2

'crossed the line' when it copied" the Tectyl product's image and product descriptions. (Id. ¶¶ 34-35, Exh. E).

On November 17, 2023, defendant filed the instant motion seeking transfer of venue to the Eastern District of Missouri. (Doc. 11).  Having been fully briefed by the parties, this matter is ripe for disposition.

**Jurisdiction**

As this matter arises under the Copyright Act, 17 U.S.C. § 101, *et seq.*, this court has subject matter jurisdiction under 28 U.S.C. § 1331, ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), and 28 U.S.C. § 1338(a), ("[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights and trademarks.").

Plaintiff asserts that venue is proper in this district because a substantial part of the events giving rise to this action occurred in the United States District Court for the Middle District of Pennsylvania. (Doc. 1 at ¶ 7 (citing 28 U.S.C §§ 1391(b)(2)).  Plaintiff also asserts that venue is appropriate in this district under 28 U.S.C. § 1400(a). (Id.)

3

**Legal Standard**

Defendant Santie Oil brings this motion to change venue under 28 U.S.C. § 1404(a).[3] That statute provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)(citing Cont'l Grain Co. v. The FBL-585, 364 U.S. 19, 26-27 (1960)).

Section 1404(a) vests broad discretion with the district courts "to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30–31 (1988)). "In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice)[.]" Id. at 879. Rather,

---

[3] "Section 1404(a) provides for the transfer of a case where both the original and requested venue are proper." Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995). Defendant argues in its motion that plaintiff's complaint mistakenly relies on the wrong venue statute. (Doc. 12 at 4, Doc. 18 at 2). By virtue of filing this motion pursuant to 28 U.S.C. § 1404(a), defendant concedes that venue is appropriate in the Middle District of Pennsylvania.

4

other private and public interest factors are identified for courts to consider, as further discussed below. Id.

When considering motions to transfer venue under Section 1404(a), the burden of persuasion remains with the moving party. See In re McGraw-Hill Glob. Educ. Holdings LLC, 909 F.3d 48, 57 (3d Cir. 2018)(citing Jumara, 55 F.3d at 879). Put another way, the burden here is not on the plaintiff to show that the proposed alternative forum is inadequate. Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 480 (D.N.J. 1993)(citations and internal quotation marks omitted). "On the contrary, the burden is on the moving party to show the proposed alternate forum is not only adequate but also more convenient than the present forum." Id.

**Analysis**

A motion to transfer under Section 1404(a) "calls on the district court to weigh in the balance a number of case-specific factors." Stewart Org., Inc., 487 U.S. at 29. However, prior to application of the private and public interest factors under Section 1404(a), a threshold concern is whether venue is proper in the proposed transferee district court. See Jumara, 55 F. 3d at 877-78; see also Holder v. Suarez, No. 3:14-cv-1789, 2015 WL 1345209, at *2 (M.D. Pa. Mar. 25, 2015)(citations omitted)(discussing the "might have been brought" language of Section 1404(a)). Thus, the court will first consider whether plaintiff could have

5

instituted this action in the Eastern District of Missouri before turning to an analysis of the private interest and public interest factors.

### 1. Whether Venue is Proper in the Eastern District of Missouri

Defendant Santie Oil argues that venue is appropriate in the Eastern District of Missouri based on the specific venue statute applicable to copyright actions.  The court agrees.

Copyright actions are subject to a specific venue provision. See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 56, n. 2 (2013). The copyright venue statute provides, "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights. . .may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. §1400(a).

The parties agree the defendant resides or may be found in Sikeston, Missouri, under Section 1400(a).  Thus, this action "might have been brought" in the Eastern District of Missouri for the purposes of Section 1404(a).

### 2. Private Interest Factors

The court next considers the parties' arguments relative to the private interest factors.  These factors relate to "the convenience of the parties and witnesses" as enumerated in Section 1404(a).  In re: Howmedica Osteonics

6

Corp., 867 F.3d 390, 402 (3d Cir. 2017).  The private interest factors listed in

Jumara include:

> (1) plaintiff's forum preference as manifested in the
>     original choice;
> (2) defendant's preferred forum;
> (3) whether the claim arose elsewhere;
> (4) the convenience of the parties as indicated by their
>     relative physical and financial condition;
> (5) the convenience of the witnesses—but only to the
>     extent that the witnesses may actually be unavailable
>     for trial in one of the fora; and
> (6) the location of the books and records (similarly limited
>     to the extent that files could not be produced in the
>     alternative forum).

See 55 F. 3d at 879 (citations omitted).

Additionally, the Third Circuit has more recently included consideration of

"all other practical problems that make trial of a case easy, expeditious and

inexpensive" in the balancing of private interests. In re: Howmedica Osteonics

Corp., 867 F.3d at 402 n. 7 (citing Atl. Marine Const. Co., 571 U.S. at 62, n. 6).

### a. Plaintiff's Choice of Forum

The first private interest factor considers plaintiff's choice of forum.  "It is

black letter law that a plaintiff's choice of a proper forum is a paramount

consideration in any determination of a transfer request[.]" Shutte v. Armco Steel

7

Corp., 431 F.2d 22, 25 (3d Cir. 1970)(citation omitted).  Moreover, in ruling on a motion to transfer venue, plaintiff's choice of venue "should not be lightly disturbed." Jumara, 55 F.3d at 879 (citation omitted).

Nevertheless, a plaintiff's choice of forum is not dispositive nor is it the only factor to be considered in a Section 1404(a) analysis.  See Ricoh Co., 817 F. Supp. at 480.  Although plaintiff's forum choice will always weigh against transfer under Section 1404(a), it is a case-specific question as to how much weight this factor should be given overall.  See Labrot v. John Elway Chrysler Jeep on Broadway, 436 F. Supp. 2d 729, 731 (E.D. Pa. 2006) (citing Cameli v. WNEP–16 The News Station, 134 F.Supp. 2d 403, 405 (E.D. Pa. 2001)).

For example, plaintiff's preferred forum in this matter may be given less weight when the operative facts occurred in another forum. Hillard v. Guidant Corp., 76 F. Supp. 2d 566, 569 (M.D. Pa. 1999) (citations omitted)("where none of the operative facts of the action occurred in the plaintiff's chosen forum, the choice is afforded less weight."); see also Cameli, 134 F. Supp. 2d at 406 (finding plaintiff's choice of forum to be "a factor worthy of consideration, but not a paramount one" where the operative facts occurred in another district).

As discussed next, plaintiff's claims in this matter arose out of alleged conduct centered in the Eastern District of Missouri and thus most, if not all, of the operative facts in this case occurred there.  Accordingly, although plaintiff's

8

choice of forum counts against transfer, here this factor will be provided much less weight.

### b. Defendant's Preferred Forum and Whether the Action Arose Elsewhere

The next two factors, defendant's preferred forum and whether the action arose elsewhere, will be considered together.  Defendant Santie Oil argues that the allegedly infringing conduct occurred in Missouri where it seeks to transfer this case. (Doc. 12 at 5-6).  Plaintiff counters that the infringing conduct did not occur in Missouri.  (Doc. 17 at 8-9).  Rather, because the alleged copyright infringement occurred on Defendant Santie Oil's website, plaintiff argues that its claims essentially arose wherever the internet may be freely accessed.  The court finds defendant's arguments more persuasive.

"To make out a valid claim of copyright infringement, a plaintiff must establish '(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.' " Carlin v. Bezos, 649 F.App'x 181, 182 (3d Cir. 2016)(quoting Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002)).

Regarding the second element, both parties provide additional information about defendant's alleged unauthorized copying.  In the complaint, plaintiff attaches a reply e-mail from Defendant Santie Oil's representative to a cease-and-desist letter, which provides:

9

Matt–

I am going to take the Tectyl line down from the webstore for the time being until I can dig into this more. I know my marketing team was utilizing photoshop to make the product package sizes, but I am not sure how much they used from what was sourced online. . .I appreciate the heads up, and please assure the [plaintiff's] brass that we understand we crossed the line, ownership and upper management is investigating the process that was taken, and we will rectify the situation [sic] . . . .

(Doc. 1-6, Complaint Exh. E.).

The e-mail attached to plaintiff's complaint also refers to defendant's alleged practice as "website scraping," or webscraping. (Id.) Generally, webscraping is an automated process performed by software. See eBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1060 (N.D. Cal. 2000). Here, however, defendant has attested that human employees were directly involved in the alleged infringement. (See Doc. 12-1, Decl. of Bruce Barnes ¶ 7 ("The Tectyl 275 product page was developed, created, and published to Santie Oil's website from its office in Sikeston, Missouri."), ¶¶ 12, 15 (stating that defendant's customer service manager directed a customer service representative to prepare and publish the webpage for the Tectyl product at issue)). Despite plaintiff's argument that the infringement was accessible throughout the United States, this argument falls short in response to defendant's statements about what transpired at its principal place of business in Missouri.

10

Plaintiff also contends that defendant's motion to transfer venue fails to acknowledge the harm suffered by plaintiff in Pennsylvania. This argument is also not persuasive because the alleged harm to plaintiff originated in Missouri and evidence relative to plaintiff's available remedies would also be located there.

First, plaintiff seeks a permanent injunction to prevent further infringement of the website product images and descriptions by the defendant. (Doc. 1, Complaint, Prayers for Relief). Under the Copyright Act, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of copyright." 17 U.S.C. § 502(a). Courts have found that "[w]hen past infringement and a substantial likelihood of future infringements is established, a copyright holder is ordinarily entitled to a permanent injunction against the infringer." A & N Music Corp. v. Venezia, 733 F.Supp. 955, 957 (E.D. Pa. 1990). As alleged, defendant has reproduced plaintiff's proprietary images and descriptions since at least 2016. (Doc. 1, Complaint ¶¶ 24-28). The injunctive relief plaintiff seeks would require consideration of the alleged past infringement and threat of continued infringement, which, as noted above, arises from defendant's business operations based in Missouri.

Second, plaintiff seeks monetary damages.  The Copyright Act provides that a copyright infringer is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer. . .or (2) statutory damages[.]" 17 U.S.C. § 504(a)(1)–(2).  A copyright owner "may elect. . .to recover instead of actual damages and profits an award of statutory damages for all infringements involved in the action, with respect to any one work. . .in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the copyright owner proves a willful copyright violation, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

At the time of filing of the complaint, however, plaintiff averred that its damages had not yet been determined.  (Doc. 1 ¶ 52).  Plaintiff's brief in opposition to the motion to transfer venue also sheds no light on whether actual or statutory damages will be pursued.  Due to this uncertainty regarding damages, the court cannot fully consider what evidence would be located in the Middle District of Pennsylvania such as records of plaintiff's actual damages. Based on what the court can consider, however, plaintiff's claims arose from the alleged conduct of defendant's Missouri-based employees.  If statutory damages are pursued, any state of mind evidence would come from the testimony of these

employees or from other evidence located in Missouri.  Accordingly, these two factors weigh heavily in favor of transfer.

### c. The Convenience Private Interest Factors

The fourth and fifth private interest factors weigh convenience to the parties and to the witnesses. Convenience to the parties evaluates the parties' relative physical and financial conditions, including who can afford travel to the transferee forum, but this factor does not consider the convenience of counsel.  Stewart v. First Student, Inc., 639 F. Supp. 3d 492, 500 (E.D. Pa. 2022)(quotation marks and citations omitted).  Based on the information available to the court, both parties appear to be similarly situated.  Accordingly, this factor is neutral.

Turning next to convenience of witnesses, the court notes that "[t]here are many different types of witnesses. . .and each one carries a different weight." Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 199 (E.D. Pa. 2008). Fact witnesses with firsthand knowledge of the events giving rise to the lawsuit traditionally have heavier weight than party witnesses or witnesses employed by a party.  Id. (citing Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp. 2d 192, 203 (D.Del.1998)). Moreover, the court is "only required to consider the convenience of witnesses 'to the extent that they may actually be unavailable for trial in one of the fora.' " Scanlan v. Am. Airlines Grp., Inc., 366 F. Supp. 3d 673, 678 (E.D. Pa. 2019)(citing Jumara, 55 F.3d at 879).

13

Neither party identifies a non-affiliated fact witness. Defendant Santie Oil, however, states that every employee knowledgeable about the matters implicated in plaintiff's complaint works and resides in Missouri, including nine specifically identified individuals. (Doc. 12-1, Decl. of Bruce Barnes ¶¶ 9-10, 12-19; Doc. 18-1, Supp. Decl. of Bruce Barnes ¶¶ 3-4). Per defendant, travel of these employees to the Middle District of Pennsylvania for trial would seriously disrupt defendant's business operations. (Doc. 12-1 ¶ 11). Additionally, according to a declaration filed by the defendant, one of the nine employees would face a serious hardship if obligated to travel to the Middle District of Pennsylvania. (Id. ¶ 14).

Even still, witnesses employed by a party have little impact on the convenience analysis "since each party is obligated to procure the attendance of its own employees for trial." Coppola, 250 F.R.D. at 199; see also Hillard, 76 F. Supp. 2d at 570 ("The party witnesses are presumed to be willing to testify in either forum despite any inconvenience."). If this matter were to proceed in the Middle District of Pennsylvania, the aforementioned "unavailable" employee at Defendant Santie Oil may be deposed for trial or leave may be granted for that employee to testify live at trial through video conferencing software. Thus, this convenience factor is also neutral in terms of transfer.

14

### d. The Remaining Private Interest Factors

The next private interest factor considers the location of books and records, but limited to the extent that the files could not be produced in the alternative forum. "[T]echnological advancements significantly reduce the weight of this factor as files can be easily reproduced and provided in electronic format." Scanlan, 366 F. Supp. 3d at 678 (citing Coppola, 250 F.R.D. at 200). Here, the parties have not identified any documents that cannot be easily reproduced and provided in electronic format. This factor is thus neutral.

The final private interest factor weighs practical considerations that could make the trial easy, expeditious, or inexpensive, but the court "must be careful to not interpret this factor so as to 'double count' any considerations [] made in the context of other factors." Id. at 679 (citing Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 2009 WL 3055300, at *5 (W.D. Pa. Sept. 21, 2009)). Regarding this factor, Defendant Santie Oil offers nothing other than arguments referenced above regarding where plaintiff's claims arose, so this factor is likewise neutral.

In sum, the court concludes that plaintiff's choice of forum weighs slightly against transfer. Defendant's preferred forum weighs in favor of transfer. The factor regarding where the claim arose weighs strongly in favor of transfer. The remaining private interest factors are neutral.

### 3. Public Interest Factors

The court will next examine the public interest factors. "Consideration of

public factors under <u>Jumara</u> requires the court to evaluate each forum and

determine where the litigation can proceed in the most efficient and inexpensive

fashion." <u>In re Amkor Tech., Inc. Sec. Litig.</u>, No. CIV.A. 06-298, 2006 WL

3857488, at *6 (E.D. Pa. Dec. 28, 2006).  These public interest factors include:

> (1) the enforceability of the judgment;
> (2) administrative difficulties in the two fora due to court
>     congestion;
> (3) the local interest in deciding local controversies;
> (4) public policies of the fora;
> (5) the familiarity of the trial judge with the applicable
>     state law; and
> (6) consideration of judicial economy

<u>See Jumara</u>, 55 F.3d at 879-80 (citations omitted); <u>In re: Howmedica Osteonics Corp.</u>, 867 F.3d at 402 & n. 7 (3d Cir. 2017). [4]

Defendant concedes that factors considering enforceability of the judgment,

public policies, and familiarity with state law are neutral in the analysis. (Doc. 12

at 13).  Additionally, some judicial economy considerations are neutral because

the parties have not identified any cases in the Eastern District of Missouri with

---

[4] As mentioned above, the Third Circuit shifted consideration of "all other practical problems that make trial of a case easy, expeditious and inexpensive" from the public interest factors to the private interest factors after the Supreme Court's decision in <u>Atlantic Marine</u>. <u>See In re: Howmedica Osteonics Corp.</u>, 867 F.3d at 402, n. 7 (citing <u>Atl. Marine Const. Co.</u>, 571 U.S. at 62, n. 6).

"the same or similar issues and parties" or any pending cases in this district with "the same or similar legal and factual issues." See In re: Howmedica Osteonics Corp., 867 F.3d at 402.  Thus, the court will proceed to analyze only two public interest factors, administrative difficulties in the two fora due to court congestion and the local interest in deciding local controversies.

Administrative difficulties will be considered first.  Defendant relies on statistical comparisons between the Eastern District of Missouri and the Middle District of Pennsylvania using caseload data from the Administrative Office of United States Courts ("AO").[5]  Defendant argues that the differences in case disposition are appreciable, while plaintiff counters that these statistics show a negligible difference.

The court notes that other judges have considered AO statistics in assessing administrative efficiency as part of its Section 1404(a) analysis. Dariz v. Republic Airline Inc., 377 F. Supp. 3d 499, 505 (E.D. Pa. 2019); see also Ediweh v. Homesite Ins. Co. of the Midwest, 2024 WL 493426, at *5 (E.D. Pa. Feb. 7, 2024)(evaluating efficiency using AO caseload statistics from September

---

[5] Defendant cites caseload statistics available as of June 30, 2023.  These statistics have been updated. See United States District Courts — National Judicial Caseload Profile (December 31, 2023), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2023.pdf (last accessed February 23, 2024).

All statistics in this section are obtained from this document.

2023 and finding that this factor weighed slightly against transfer of a case from the Eastern District of Pennsylvania to the Middle District of Pennsylvania).

As of December 31, 2023, the Eastern District of Missouri had 3,122 pending criminal and civil cases pending for eight (8) judgeships with a median time for disposition of 6.9 months for civil cases.  In the Middle District of Pennsylvania, there were 3,638 pending criminal and civil cases for six (6) judgeships[6] with a median time of disposition of 10.8 months for civil cases.  In the last five years, the median time from filing of a civil action to trial increased from 34.4 months to 52.3 months in the Middle District of Pennsylvania.  In the Eastern District of Missouri, the most recent available data from December 31, 2022 reflected a median time of 39.3 months from filing to trial in civil matters.

The public has an interest in optimizing judicial resources to ensure the timely resolution of all cases.  Based on the above statistics, civil litigants in the Eastern District of Missouri can expect more judges with fewer overall cases and a shorter time for disposition, particularly civil cases that go to trial.  There is a discernible difference between the districts based on AO data.  This factor thus weighs in favor of transfer.

---

[6] These statistics also measure "vacant judgeship months."  As of December 31, 2023, the Middle District of Pennsylvania had 24 vacant judgeship months while the Eastern District of Missouri experienced none.

Finally, the court will consider local interest in deciding local controversies. In copyright infringement actions between two competitors, the district where a defendant has its "headquarters" has a local interest even where there are other state law claims. See Deloitte Consulting LLP v. Sagitec Sols. LLC, No. CV 23-325-WCB, --- F. Supp. 3d ----, 2023 WL 6038657, at *10 (D. Del. Sept. 15, 2023). Similarly, a party's status as a state corporate entity gives a district in that state "at least some interest in adjudicating that dispute." Id. Defendant has its headquarters in Missouri and Plaintiff is incorporated in Pennsylvania. This factor is thus neutral.

Out of the two public interest factors to consider, one factor is neutral. The other factor, administrative difficulty, balances the public interest factors in favor of transfer to the Eastern District of Missouri.

After considering all relevant private and public interest factors, only one weighs against transfer, plaintiff's choice of forum. Ordinarily, this choice would not be disturbed. Under the circumstances, however, defendant has met its burden in demonstrating that its preferred forum is more appropriate because plaintiff's copyright infringement claims arose out of alleged conduct that occurred in the Eastern District of Missouri. Additionally, there is a discernable difference regarding administrative efficiency with statistics showing a faster overall disposition of civil cases in the Eastern District of Missouri. Accordingly,

19

Defendant Santie Oil's motion to transfer venue pursuant to Section 1404(a) will be granted.

**Conclusion**

For the reasons set forth above, the court will grant defendant's motion to transfer venue and direct the Clerk of Court to transfer this matter to the Eastern District of Missouri.  An appropriate order follows.

Date: _____

_____
**JUDGE JULIA K. MUNLEY**
**United States District Court**